STATE OF NORTH CAROLINA v. JAMES MOORE, JR.

No. 9028SC431

(Filed 4 June 1991)

1. **Criminal Law § 101 (NCI4th)— child sexual abuse—defendant's admission of abuse of another child—not disclosed—admissible**

    The trial court did not err in a prosecution for rape, first degree sexual offense and taking indecent liberties by admitting a statement possessed by the State containing defendant's admission that he had sexually abused another child where the State had not revealed the statement in response to defendant's discovery request. The trial court noted that the State had not initially attempted to introduce the statement and that defendant opened the door by questioning the witness about DSS files which contained the statement. N.C.G.S. § 15A-903(a)(2).

    **Am Jur 2d, Depositions and Discovery §§ 432-434.**

2. **Rape and Allied Offenses § 5 (NCI3d)— first degree rape— evidence sufficient**

    The trial court did not err by refusing to dismiss a prosecution for defendant's first degree rape of his daughter for insufficient evidence where the victim testified to defendant's acts and demonstrated her testimony with anatomically correct dolls, identifying the female doll as herself and the male doll as her father; the victim identified defendant's home as the location where the acts took place; the victim denied that anyone else had touched her private parts; two other witnesses described the victim's use of anatomically correct dolls when

demonstrating what defendant had done to her; and there was medical testimony consistent with sexual abuse.

**Am Jur 2d, Rape §§ 88 et seq.**

3. **Criminal Law § 34.5 (NCI3d) — child sexual abuse — evidence of sexual misconduct with other victims — admissible**

The trial court did not err in a prosecution for rape, first degree sexual offense and taking indecent liberties by admitting into evidence testimony regarding defendant's prior alleged sexual misconduct with two other victims. Defense counsel elicited testimony during cross-examination of a witness which would imply that defendant's ex-wife could have been responsible for abuse of the victim and then asked the witness how she concluded that defendant had abused the victim. The State was entitled to have the witness explain her answer during redirect examination.

**Am Jur 2d, Rape §§ 71, 73, 75, 102.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

4. **Rape and Allied Offenses § 4.1 (NCI3d) — child sexual abuse — other victims — admissible on cross-examination**

The trial court did not err in a prosecution for rape, first degree sexual offense, and taking indecent liberties by allowing the State to cross-examine defendant about specific acts of sexual abuse of two other victims where testimony as to one other victim had been properly admitted and any testimony about that victim by defendant was merely cumulative, and cross-examination of defendant as to the second victim was properly admitted because defendant opened the door to that evidence.

**Am Jur 2d, Rape §§ 71, 73, 75, 102.**

**Admissibility, in rape case, of evidence that accused raped or attempted to rape person other than prosecutrix. 2 ALR4th 330.**

5. **Attorneys at Law § 38 (NCI4th) — attorney's motion to withdraw — attorney as prospective witness — motion denied**

The trial court did not abuse its discretion in a prosecution for rape, first degree sexual offense, and taking indecent liber-

ties by denying defense counsel's motion to withdraw in order to serve as a witness for defendant. Defense counsel contended that he should be allowed to testify that the victim had told him that the incidents did not occur in her father's trailer, but the jury heard evidence relative to the child victim's inconsistent testimony as to where the alleged misconduct occurred and returned a special verdict on jurisdiction.

**Attorneys at Law §§ 173, 174.**

**Defense attorney as witness for his client in state criminal case. 52 ALR3d 887.**

APPEAL by defendant from judgments entered 16 October 1989 by *Judge Shirley L. Fulton* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 15 January 1991.

On 3 April 1989 defendant was indicted for first degree rape, first degree sexual offense and taking indecent liberties between 1 August 1988 and 31 August 1988 with his five year old biological daughter. The evidence presented at trial tended to show that the victim lived with her father and younger siblings in a trailer in Woodfin, North Carolina. The victim's parents had been divorced on 9 June 1988.

On 2 November 1988 Detective Sergeant Eugene C. Loeffler received a call reporting that some children were running around "with no clothes on" at the end of Walnut Lane. Loeffler dispatched Officer Krause to the scene who in turn requested Loeffler's assistance. By the time Loeffler arrived at the scene, the children were dressed in clothes given to Krause by a neighbor and "were running around wild." Krause tried to wake up defendant several times but was unable to get him to answer the door. Since he had reported the children running around unsupervised in the past to the Department of Social Services (DSS), Loeffler decided to take the children to DSS. Defendant eventually answered the door and Loeffler informed him that he (defendant) needed to go to DSS to talk over the situation.

While in custody of DSS, the victim received a physical examination on 16 November 1988 by Dr. Ann Gravatt. During trial, Dr. Gravatt testified that the findings from the physical examination of the victim were consistent with sexual abuse and sexual intercourse. The examination revealed that the victim's "vaginal

introital diameter" was 10 millimeters, which was larger than expected, and that the victim had no hymenal tissue to protect the entrance to the vaginal opening.

At trial the victim testified that defendant "hurt [her] in the private parts" and demonstrated how defendant hurt her private parts with anatomically correct dolls. First, the victim identified the female doll as herself and the male doll as her father (defendant). The victim then placed the penis of the male doll against the vaginal area of the female doll. The victim identified the penis as "peanut" and nodded her head in the affirmative that her vaginal area was what she referred to as "private parts." The victim identified defendant's home from a photograph as the place where defendant "put his private parts in [her] private parts." The victim testified that no one else had touched her in her private parts other than defendant. The victim indicated that these events happened approximately the month before school started. During trial there were some conflicts in the victim's testimony as to whether the alleged sexual abuse occurred in North Carolina or South Carolina since the victim had also visited Greenville, South Carolina during the summer that the alleged sexual abuse occurred.

Defendant presented evidence during trial through his testimony and the testimony of other witnesses that the victim had a history of untruthfulness. Defendant also presented evidence through the testimony of witnesses that he had not sexually abused any of his children. Defendant testified denying that he had sexually abused the victim. During cross-examination, the State questioned defendant about whether he had abused his seven-month old stepson seven years before and also sexually abused his fifteen-year old sister-in-law. Defendant denied these allegations.

At the close of the State's evidence, the trial court dismissed the first degree sexual offense charge. The jury returned a special verdict as to jurisdiction finding that North Carolina had jurisdiction to try defendant. The jury also returned guilty verdicts on the charges of first degree rape and taking indecent liberties with a minor. The trial court sentenced defendant to life imprisonment for the first degree rape and ten years imprisonment for taking indecent liberties with a minor. Defendant appeals.

STATE v. MOORE

[103 N.C. App. 87 (1991)]

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Mary Jill Ledford, for the State.*

*Whalen, Hay, Pitts, Hugenschmidt, Master, Devereux & Belser, P.A., by David G. Belser, for defendant-appellant.*

EAGLES, Judge.

I.

[1] Defendant first assigns as error the trial court's admission into evidence of a statement possessed by the State containing defendant's admission that he had sexually abused another child, when the State had not revealed the statement in response to a discovery request by defendant. Defendant argues that "the introduction into evidence of damaging statements made by defendant to Department of Social Services (D.S.S.) personnel was improper in light of the fact that such statements were not made available to defendant prior to trial as required by law." Defendant contends that he was "incapable of mounting an appropriate defense as required by due process of law." Defendant also contends that the trial court's refusal to grant his motion for discovery sanctions was also improper because G.S. 15A-903(d) requires disclosure of the documents and the trial court's legal analysis on this issue was improper. Defendant argues that the trial court's "failure to impose *any* discovery sanction amounted to an abuse of discretion." Defendant argues that the trial court's refusal to grant his discovery sanctions request amounted to reversible error. We disagree.

> Upon motion of a defendant, a trial court must order the prosecutor to permit a defendant to inspect and copy any relevant written or recorded statements in the State's control that were made by a defendant. N.C.G.S. § 15A-903(a)(1) (1983). Further, N.C.G.S. § 15A-903(a)(2) provides that upon motion, the trial court must order the prosecutor to divulge any oral statements made by the defendant that are relevant to the case. When a party fails to comply with the order, the trial court may grant a continuance or a recess, prohibit the violating party from introducing the non-disclosed evidence, or enter any other appropriate order. N.C.G.S. § 15A-910 (1983). Because the trial court is not required to impose any sanctions for abuse of discovery orders, what sanctions to impose, if any, is within the trial court's discretion, *State v. Alston*, 307 N.C. 321, 298 S.E.2d 631 (1983), including whether to admit or exclude evidence

not disclosed in accordance with a discovery order. *State v. Braxton*, 294 N.C. 446, 242 S.E.2d 769 (1978).

*State v. Weeks*, 322 N.C. 152, 171, 367 S.E.2d 895, 906 (1988). We note that here defendant did not seek imposition of sanctions generally but limited his request to exclusion of the evidence and mistrial. The trial court refused to impose either of those sanctions and no others were requested. "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Gladden*, 315 N.C. 398, 412, 340 S.E.2d 673, 682, *cert. denied*, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 166 (1986).

We note that G.S. 15A-903(a)(2) requires the disclosure of "any oral statement relevant to the subject matter of the case made by the defendant, regardless of to whom the statement was made, within the possession, custody, or control of the State[.]" Without addressing whether G.S. 15A-903(a)(2)'s requirement for disclosure would operate to permit the court to exclude the evidence, we hold that the trial court did not abuse its discretion in admitting the statement after cross-examination. Here, during a bench conference the prosecutor admitted that she was aware of the statement but believed that she could not successfully offer the statement into evidence in her case in chief since she had not provided the statement pursuant to defendant's request. In its ruling, the trial court stated that the statement was not directly relevant to the instant case since it involved another child and the mother of the child. The trial court noted that the State had not initially attempted to introduce the statement. However, the court pointed out that defendant had "opened the door" to the matter and relying on the business record exception to the hearsay rule, had questioned the witness about DSS files on the Moore family which contained defendant's statement that he had abused another child. Because defendant had "opened the door," the trial court then allowed the State on redirect examination to ask further questions about the prior allegation of abuse with another victim. On this record, we hold that the trial court did not abuse its discretion in admitting the evidence since defendant had in fact "opened the door."

## II.

[2] Defendant next assigns as error the trial court's refusal to dismiss based on the insufficiency of the evidence. Defendant argues

that "the evidence presented by the State failed to prove the essential element of penetration of the victim's vagina by the defendant, and was therefore insufficient to prove the offense of First Degree Rape as defined [in] N.C.G.S. § 14-27.2." Defendant contends that "the evidence was simply too uncertain and insufficient for a jury to find the element of penetration beyond a reasonable doubt." We disagree.

> For a charge of first degree rape to withstand a motion to dismiss for insufficient evidence, there must be evidence among other things, that defendant engaged in vaginal intercourse with the victim. G.S. 14-27.2. In ruling on a motion to dismiss for insufficient evidence the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence. *State v. Bell*, 311 N.C. 131, 138, 316 S.E.2d 611, 615 (1984). There must be substantial evidence of each essential element of the offense charged, together with evidence that defendant was the perpetrator of the offense. *State v. Gardner*, 311 N.C. 489, 510-11, 319 S.E.2d 591, 605 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1232, 84 L.Ed. 2d 369 (1985).

*State v. Green*, 95 N.C. App. 558, 562, 383 S.E.2d 419, 421 (1989). "Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. Further, '[t]he trial court is *not* required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss.' " *State v. Bruce*, 315 N.C. 273, 281, 337 S.E.2d 510, 516 (1985).

In *Green, supra*, the seven year old victim answered affirmatively when asked if defendant, who was her biological father, had " 'put his private parts in [her] private parts.' " 95 N.C. App. at 559, 383 S.E.2d at 420. The victim also answered affirmatively when asked if defendant had " 'put his private parts in [her] mouth,' " *id.*, and if defendant had " 'lick[ed her] private parts.' " *Id.* at 560, 383 S.E.2d at 420. In *Green*, the State presented corroborative evidence from the victim's mother, a police detective and the doctor who examined the victim and testified that the findings from the physical examination of the child were " 'compatible with penile penetration.' " *Id.* at 563, 383 S.E.2d at 422. The *Green* court held this evidence sufficient to withstand defendant's motion to dismiss.

STATE v. MOORE

[103 N.C. App. 87 (1991)]

In *State v. Estes*, 99 N.C. App. 312, 393 S.E.2d 158 (1990), defendant there argued that the victim's testimony that defendant " 'stuck his thing' in the 'back and front' of the child," *id.* at 315, 393 S.E.2d at 160, notwithstanding any physical evidence or demonstration by the victim on anatomically correct dolls of the alleged misconduct was insufficient evidence of penetration for first degree sexual offense. The *Estes* court noted that our Supreme Court in *State v. Hicks*, 319 N.C. 84, 352 S.E.2d 424 (1987), found the victim's testimony that defendant " 'put his penis in the back of me,' " *id.* at 316, 393 S.E.2d at 160, insufficient to withstand a motion to dismiss. The *Estes* court, however, distinguished its case from *Hicks* because in *Estes* the victim further identified the "back of her" as " 'where I go number two.' " *Id.*

Here the victim testified that defendant "hurt [her] in the private parts." She then demonstrated how defendant hurt her using anatomically correct dolls. The victim identified the female doll as herself and the male doll as her father. The victim then placed the penis, which she identified as "peanut" against the vaginal area of the female doll, which she indicated was her "private parts." The victim also identified defendant's home as the location where defendant "put his private parts in [her] private parts." The victim also replied "no" when asked if "anybody else ever touched you in your private parts." Further, Detective Loeffler testified that the child demonstrated what defendant did to her with anatomically correct dolls by "[sticking] the penis of the male doll around the vaginal area of the female doll." Rosemary Provencher also testified that the victim "took the penis of the male doll and put it around the area, the vaginal area of the female doll" when demonstrating what defendant did to her. Finally, Dr. Gravatt testified that the victim's vaginal opening was significantly larger than that of a child four to five years of age, that there was no hymenal tissue, that there was "ragged scar tissue" in the process of healing and that the victim had a urinary tract infection which is typically seen in sexually abused children. Dr. Gravatt further testified that the victim's injuries were consistent with sexual abuse and that "there [was] no way that normal childhood play or accidents could [have] cause[d] the type of findings on this physical exam." We find the cases cited by defendant distinguishable and defendant's arguments unpersuasive. Accordingly, this assignment of error is overruled.

## III.

[3] Defendant contends that the trial court erred in admitting into evidence alleged prior misconduct of defendant. Defendant contends that the trial court erred in failing to exclude testimony regarding prior alleged sexual misconduct involving two other victims, "neither of whom were victims in the case in which defendant was tried." Defendant argues that the evidence presented by the State was contrary to the rules of evidence "and unduly inflamed and prejudiced the jury against the defendant." We disagree.

First, with respect to the trial court's admission of testimony from the State's witness Rosemary Provencher involving defendant's admission that he abused another victim approximately seven years prior to the current charges of sexual abuse, we agree with the State's contention that Rule 404 of the Rules of Evidence is not dispositive on the admissibility of Ms. Provencher's testimony.

> [I]t is a general rule of evidence that in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. Various exceptions to this general rule of inadmissibility, as well recognized as the rule itself, are discussed in *State v. McClain*, 240 N.C. 171, 81 S.E.2d 364 (1954). The admissibility of the evidence challenged by this assignment of error, however, is not governed by the rule of evidence discussed in *State v. McClain, supra*. Here, evidence was elicited from [the witness] on cross-examination calculated and intended to show bias and to discredit her testimony. This calls for application of the rule that where evidence of bias is elicited on cross-examination the witness is entitled to explain, if he can, on redirect examination, the circumstances giving rise to bias so that the witness may stand in a fair and just light before the jury. "A party cannot be allowed to impeach a witness on the cross-examination by calling out evidence culpatory of himself and there stop, leaving the opposing party without opportunity to have the witness explain his conduct, and thus place it in an unobjectionable light if he can. In such case the opposing party has the right to such explanation, even though it may affect adversely the party who cross-examined. Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so." *State v. Glenn*, 95 N.C. 677 (1886). *Stansbury*

states the rule in these words: "If circumstances evidencing bias are elicited on cross-examination, the witness is entitled to explain them away, if he can, on redirect examination, after which the cross-examining party may produce evidence nullifying the effect of the explanation." [Citations omitted.]

*State v. Patterson*, 284 N.C. 190, 195-96, 200 S.E.2d 16, 20 (1973).

[T]he law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself. Where one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially.

*State v. Leroux*, 326 N.C. 368, 383, 390 S.E.2d 314, 324, *cert. denied*, 111 S.Ct. 192, 59 U.S.L.W. 3249, 112 L.Ed.2d 155 (1990), quoting, *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981). "[W]here defense counsel on cross-examination of a witness brings out evidence tending to show that someone else was suspected of committing the crime charged, the State is entitled to introduce evidence in explanation or rebuttal thereof, even though such evidence would have been irrelevant had it been offered initially by the State. In such a case, the defendant has 'opened the door' to this testimony and will not be heard to complain. 'Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so.' " *State v. Stanfield*, 292 N.C. 357, 364, 233 S.E.2d 574, 579 (1977).

Here, during cross-examination of Ms. Provencher, defendant elicited testimony which would imply that defendant's ex-wife and not defendant could have been responsible for abusing the victim. Defense counsel questioned Ms. Provencher about how she concluded that defendant abused the victim in view of the information in the file concerning the victim's mother's admission to abusing one of her other children. Ms. Provencher stated that she "would have to expand on [her] answer on that, with the other information that I know about that." At that particular time defense counsel concluded cross-examination. The State asked her the objected to question for the purpose of explaining her testimony on cross-examination. The State was entitled to have its witness explain her answer during re-direct examination. Accordingly, this assignment of error is without merit.

STATE v. MOORE

[103 N.C. App. 87 (1991)]

## IV.

**[4]** Defendant also argues that the trial court erred in allowing the State to cross-examine defendant about specific acts of sexual abuse of two other victims.

> [I]t has been accepted as an established principle in North Carolina that "the State may not offer proof of another crime independent of and distinct from the crime for which defendant is being prosecuted even though the separate offense is of the same nature as the charged crime." . . .
>
> Rule 404(b) of the North Carolina Rules of Evidence provides as follows:
>
>> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

*State v. DeLeonardo*, 315 N.C. 762, 769, 340 S.E.2d 350, 355 (1986). " 'Our Court has been very liberal in admitting evidence of similar sex crimes in construing the exceptions to the general rule.' " *Id.* at 770, 340 S.E.2d at 356, quoting, *State v. Williams*, 303 N.C. 507, 513, 279 S.E.2d 592, 596 (1981).

> Our Supreme Court has held "that evidence of prior sex acts may have some relevance to the question of defendant's guilt of the crime charged if it tends to show a relevant state of mind such as intent, motive, plan, or opportunity." However, "the ultimate test for determining whether such evidence is admissible is whether the incidents are sufficiently similar and not so remote in time as to be more probative than prejudicial under the balancing test of . . . Rule 403." The period of time between the prior sexual acts and the acts charged is an important part of the balancing process. "[T]he passage of time between the commission of the . . . acts slowly erodes the commonality between them."

*State v. Roberson*, 93 N.C. App. 83, 85, 376 S.E.2d 486, 487, *disc. rev. denied*, 324 N.C. 435, 379 S.E.2d 247 (1989). "While a lapse of time between instances of sexual misconduct slowly erodes the

commonality between acts and makes the probability of an ongoing plan more tenuous, the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan." *State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989).

" '[T]he facts of each case ultimately decide whether a defendant's previous commission of a sexual misdeed is peculiarly pertinent in his prosecution for another independent sexual crime.' " *Id.* at 446-47, 379 S.E.2d at 848. "[E]vidence of defendant's prior misconduct with other family members properly was admitted to show that 'defendant systematically engaged in nonconsensual sexual relations with his [daughters] as they matured physically, a pattern of conduct embracing the offense charged.' " *Id.* at 447, 379 S.E.2d at 848.

> Remoteness in time is more significant when evidence of another crime is admitted to show that it and the crime being tried both arose out of a common scheme or plan. It would be unlikely, though not inconceivable, that crimes committed several years apart were planned at the same time. Remoteness in time is less important when the other crime is admitted because its *modus operandi* is so strikingly similar to the *modus operandi* of the crime being tried as to permit a reasonable inference that the same person committed both crimes. It is reasonable to think that a criminal who has adopted a particular *modus operandi* will continue to use it notwithstanding a long lapse of time between crimes.

*State v. Riddick*, 316 N.C. 127, 134, 340 S.E.2d 422, 427 (1986).

Here the trial court admitted evidence that defendant sexually abused two other victims. First, the trial court admitted evidence that defendant sexually abused his seven-month-old stepson allegedly on 17 July 1981. This information was properly admitted through the testimony of Ms. Provencher on re-direct examination to explain why she thought defendant also committed the sexual abuse of the victim in the current case. The seven-month old victim suffered from "double subdural hematomas, multiple facial and body bruises, and his penis was blackened." As a result, any testimony concerning this victim elicited from defendant was merely cumulative of testimony by Ms. Provencher.

STATE v. MOORE

[103 N.C. App. 87 (1991)]

Second, the trial court admitted testimony that defendant sexually abused his fifteen year old sister-in-law on 7 July 1985. The cross-examination concerning defendant's misconduct towards this victim was properly admitted in view of defendant's response to cross-examination about his prior convictions. Defendant was asked to state his prior convictions and he responded that he had been "charged . . . with trying to have sexual advance with her, but it's not true. I did not. Her stepdad sent her up to cause me trouble." While the fifteen year old victim was sleeping on the couch in defendant's residence, defendant allegedly inserted his finger in her vagina. Here defendant opened the door to this evidence and the State was entitled to "explore, explain or rebut that evidence." *State v. Brown*, 310 N.C. 563, 571, 313 S.E.2d 585, 590 (1984).

Defendant also argues that allowing cross-examination of him regarding the sexual abuse of the two victims violated Rule 608 of the North Carolina Rules of Evidence.

Rule 608 allows inquiry on cross-examination into specific instances of conduct if probative of truthfulness or untruthfulness. However, in *State v. Gordon*, 316 N.C. 497, 342 S.E.2d 509 (1986), our Supreme Court stated that "extrinsic evidence of sexual misconduct is not in any way probative of a witness' character for truthfulness or untruthfulness." *Id.* at 506, 342 S.E.2d at 514. Even so, any error in admitting evidence in violation of Rule 608 does not require a new trial unless there is a " 'reasonable possibility that, had the error in question not been committed, a different result would have been reached at trial." *Id.* In this case defendant has failed to show that he has been prejudiced by the admission of the testimony. First, the testimony concerning defendant's abuse of his seven-month-old stepson was previously admitted through the State's re-direct examination of Ms. Provencher. Accordingly any cross-examination of defendant concerning this charge was merely cumulative. Secondly, defendant opened the door to the accusation of sexual misconduct towards his fifteen year old sister-in-law when responding to the State's question concerning his prior convictions. Defendant stated that the charge was not true and that he was being set up. In any event, upon receiving a negative answer, the State did not make further inquiry into the prior instances of misconduct. Accordingly this assignment of error is overruled.

STATE v. MOORE

[103 N.C. App. 87 (1991)]

V.

[5] Defendant next contends that the trial court erred in denying the defense counsel's motion to withdraw as counsel in order to serve as a witness for defendant. Defendant argues that the testimony of his attorney concerned jurisdiction which was "a matter essential to the adjudication of the case." Defendant contends that the "trial court's denial of defense counsel's motion to withdraw constituted prejudicial error which merits reversal by this court." We disagree.

Whether an attorney can withdraw as counsel is a matter in the sound discretion of the trial judge. *State v. Elam*, 56 N.C. App. 590, 593-94, 289 S.E.2d 857, 860, *disc. rev. denied*, 305 N.C. 761, 292 S.E.2d 577 (1982). On this record we hold that the trial court did not abuse its discretion in denying defense counsel's motion to withdraw. In his argument to the trial court, defense counsel mentioned the inconsistency in the victim's testimony and that he should be allowed to testify that the victim told him that the incidents did not occur in her father's trailer in Woodfin. Here the jury heard evidence relative to the child victim's inconsistent testimony as to the place where the alleged sexual misconduct occurred. The jury then returned a special verdict finding that North Carolina had jurisdiction over this matter. Accordingly, on this record we find no abuse of discretion and this assignment of error is overruled.

Accordingly, we find no error.

No error.

Judges PHILLIPS and WYNN concur.