STATE OF NORTH CAROLINA v. HARRY MALOY HICKS

No. 254A86

(Filed 3 February 1987)

**1. Witnesses § 1.2— competency of child to testify**

 The trial court did not abuse its discretion in finding that a seven-year-old sexual assault victim was competent to testify, notwithstanding the *voir dire* record reveals that she did not understand her obligation to tell the truth from a religious point of view and she had no fear of certain retribution for mendacity, where the victim indicated a capacity to understand and relate facts to the jury concerning defendant's assaults upon her, a comprehension of the dif-

ference between truth and untruth, and an obligation to tell the truth and her intention to do so. N.C.G.S. 8C-1, Rule 601(a), (b).

**2. Rape and Allied Offenses § 5— first degree rape—sufficient evidence**

Testimony by the seven-year-old victim, her mother, the examining physician and a psychologist who had been treating the victim was sufficient to support defendant's conviction of first degree rape by having vaginal intercourse with a child under the age of thirteen when defendant was over the age of twelve and at least four years older than the victim. N.C.G.S. 14-27.2.

**3. Rape and Allied Offenses § 5— first degree sexual offense—insufficient evidence**

The evidence was insufficient to support defendant's conviction of first degree sexual offense where the only evidence introduced by the State tending to show the commission of such offense was the seven-year-old victim's ambiguous testimony that defendant "put his penis in the back of me," and there was no corroborative evidence such as physiological or demonstrative evidence that anal intercourse occurred.

**4. Indictment and Warrant § 17.2; Rape and Allied Offenses § 5— time of rape—no fatal variance**

There was no fatal variance between indictment and proof in a prosecution for first degree rape of a child in which the indictment alleged that the offense occurred "on or about and between the months of" January through March 1985 where defendant was not deprived of his defense by uncertainty as to the exact date of the offense.

APPEAL of right by defendant pursuant to N.C.G.S. 7A-27(a) from convictions of first degree rape and first degree sexual offense before *Downs, J.,* and the imposition of two consecutive life sentences at the 2 December 1985 Criminal Session of Superior Court, MECKLENBURG County. Heard in the Supreme Court 9 December 1986.

*Lacy H. Thornburg, Attorney General, by Marilyn R. Mudge, Assistant Attorney General, for the State.*

*Theo X. Nixon for defendant-appellant.*

WHICHARD, Justice.

Testimony presented by witnesses for the State tended to show that Ethel Ferrell and her three young children were living with defendant throughout the winter of 1984-85. In the spring of 1985, Mrs. Ferrell moved out with her children in anticipation of divorcing her husband and marrying defendant. When she asked her children how they felt about her plans, they responded nega-

tively, and Denise, one of the 6-year-old twins, explained to her mother that defendant had put his "privacy" into her "privacy."

Denise later testified that on several evenings when her mother was away at the store or at school, defendant took her into her mother's bedroom and "put his penis in my vagina." She testified that defendant had also "put his penis in the back of me."

The physician who treated Denise testified that Denise had told him that "she had been touched in her privates, not once but many times over a period of weeks, and that the last time had been four or five days before she came to see me." He testified that his physical examination revealed a broken hymen and a genital rash that appeared to be a yeast infection. The physician testified that these findings were consistent with Denise's having engaged in sexual intercourse, and that cases of similar symptoms appearing in the absence of sexual intercourse in girls of Denise's age were "very, very rare."

A psychologist who had been treating Denise and her family since July 1985 testified that Denise had also told him that "Harry put his private in my private," and that he diagnosed her as suffering from post-traumatic stress disorder following sexual assault.

The jury returned verdicts of guilty of first degree rape and first degree sexual offense. Defendant appeals and presents four assignments of error.

[1] First, defendant contends that the trial court abused its discretion in finding that seven-year-old Denise was competent to testify, because she arguably did not understand the nature and obligation of an oath or the necessity for telling the truth. Defendant points to the following exchanges from his attorney's cross-examination of Denise on voir dire, in which counsel probed Denise's familiarity with the Bible and her comprehension of the consequences of telling a lie:

Q. That book there that is in front of you, do you know what that is?

A. The Bible.

Q. Okay. Do you know why it is that when people come into court, they put their left hand on that Bible and raise their right hand?

A. No.

Q. Do you know why we do that in here?

A. No.

Q. Okay. Let me ask you this. This lady, Ms. Ponder [the prosecutor] over here asked you what happens to you when you tell a lie, and you said you get a whipping. Is that right?

A. Yes, sir.

\* \* \*

Q. Okay. What if nobody knew that you were telling a lie? Only you knew that you were telling a lie, and if you did come in here and tell a lie, what would happen to you? Would anything happen?

A. I don't know.

Q. Okay. If nobody else found out about it?

A. I don't know.

\* \* \*

Q. Okay. Now, let's just suppose for a few minutes that you came in here and put your hand on the Bible and raised your right hand and told a lie, and your mama and your daddy didn't know about it. What would happen to you?

A. Nothing.

Q. So if your mama and daddy didn't know about it, you could lie and nothing would happen to you at all?

A. Right.

Prior to this exchange, however, Denise had responded to direct examination as follows:

Q. Denise, do you know what it means to tell a fib or a story?

A. Yes, ma'am.

Q. What does that mean?

A. It means you get a whipping.

* * *

Q. If I were to tell you that [t]his book right here was green, would that be the truth or a lie?

A. It would be a lie.

* * *

Q. Why would that be a lie?

A. Because it isn't green. It's red.

Q. It is red. Will you tell the truth about what happened to you, here in court?

A. Yes, ma'am.

The competency of witnesses testifying in trials occurring after 1 July 1984 is determined by Rule 601 of the North Carolina Evidence Code, which provides in pertinent part that "[e]very person is competent to be a witness" except "when the court determines that he is . . . (2) incapable of understanding the duty of a witness to tell the truth." N.C.G.S. 8C-1, Rule 601(a), (b) (1986); *State v. Gordon*, 316 N.C. 497, 502, 342 S.E. 2d 509, 512 (1986). This Court has defined competency under both the new rules and the case law prior to their adoption as "the capacity of the proposed witness to understand and to relate under the obligation of an oath facts which will assist the jury in determining the truth of the matters as to which it is called upon to decide." *State v. Fearing*, 315 N.C. 167, 173, 337 S.E. 2d 551, 554 (1985), *quoting State v. Turner*, 268 N.C. 225, 230, 150 S.E. 2d 406, 410 (1966).

The voir dire record reveals that although Denise did not understand her obligation to tell the truth from a religious point of view, and although she had no fear of certain retribution for mendacity, she knew the difference between the truth and a lie. The prosecutor twice asked her whether she would be truthful about what defendant had done to her, and she twice responded, "Yes, ma'am." She indicated a capacity to understand and relate facts to the jury concerning defendant's assaults upon her, and a

comprehension of the difference between truth and untruth. She also indicated that she recognized her obligation to tell the truth, and she affirmed her intention to do so.

Further, the competency of a witness "is a matter which rests in the sound discretion of the trial judge in the light of *his examination and observation of the particular witness." State v. Fearing*, 315 N.C. at 173, 337 S.E. 2d at 554-55, *quoting State v. Turner*, 268 N.C. at 230, 150 S.E. 2d at 410. Absent a showing that the ruling as to competency could not have been the result of a reasoned decision, the ruling must stand on appeal. *E.g., State v. McNeely*, 314 N.C. 451, 453, 333 S.E. 2d 738, 742 (1985); *State v. Lyszaj*, 314 N.C. 256, 263, 333 S.E. 2d 288, 293 (1985). We are satisfied that Denise's testimony met the standards of Rule 601, and we consequently hold that there was no abuse of discretion here.

By defendant's second assignment of error, he contends that the evidence was insufficient to support the charges of first degree sexual offense and first degree rape and that the trial court therefore erred in not granting his motion to dismiss. In ruling on a motion to dismiss, the trial court is to consider the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from that evidence. *State v. Bell*, 311 N.C. 131, 138, 316 S.E. 2d 611, 615 (1984). Whether the trial court erred under these circumstances depends upon whether substantial evidence was introduced of each essential element of the offense charged and of defendant's being the perpetrator. *See State v. Gardner*, 311 N.C. 489, 510-11, 319 S.E. 2d 591, 605 (1984).

[2] The testimony of Denise, her mother, the psychologist, and the examining physician provided substantial evidence as to the occurrence of the essential elements of first degree rape — vaginal intercourse with a child under the age of thirteen by one over the age of twelve and at least four years older than the victim. N.C.G.S. 14-27.2 (1986). Denise's testimony was sufficient to implicate defendant as the perpetrator. We thus find no error in the refusal to dismiss the rape charge.

[3] For a charge of first degree sexual offense to withstand a motion to dismiss, there must be substantial evidence that defendant committed a sexual act with Denise. *See State v. Gard-*

*ner,* 311 N.C. 489, 510-11, 319 S.E. 2d 591, 605. A "sexual act" is defined by statute as cunnilingus, fellatio, analingus, anal intercourse or the penetration by any object into the genital or anal opening of another person's body. N.C.G.S. 14-27.1 (1986). The only evidence introduced by the State tending to show the commission of any of these offenses was Denise's ambiguous testimony that defendant "put his penis in the back of me." Cross-examination of the physician who examined Denise included the following exchange:

"Q. Did you find any evidence of sexual intercourse anally with her?

A. No.

Q. None at all?

A. No."

Given the ambiguity of Denise's testimony as to anal intercourse, and absent corroborative evidence (such as physiological or demonstrative evidence) that anal intercourse occurred, we hold that as a matter of law the evidence was insufficient to support a verdict, and the charge of first degree sexual offense should not have been submitted to the jury. *See State v. McKinney,* 288 N.C. 113, 119, 215 S.E. 2d 578, 583 (1975). We accordingly reverse the conviction on the charge of first degree sexual offense.

Defendant's third assignment of error concerns what he contends is a fatal variance between the type of offense and the time period in which it occurred as alleged in the indictments and as revealed by the evidence elicited at trial. Defendant argues that the original warrant and the bill of particulars alleged that the underlying offense for the charge of first degree sexual offense was cunnilingus, not anal intercourse. Because we reverse the conviction on this charge, we need not address this aspect of the assignment.

[4]   In regard to the charge of first degree rape, the indictments alleged that the offenses occurred "on or about and between the month[s] of" January through March 1985. The State's response to defendant's motion for a bill of particulars narrowed the time period to a ten-day span between 8 January and 18 January. Ex-

cept for testimony by Denise that defendant began molesting her around 8 January, defendant contends that no other evidence points to later occurrences, and that no evidence corroborated Denise's telling the physician that the latest occurrence had been four or five days before she saw him on 7 May 1985.

Statutory and case law both reflect the policy of this jurisdiction that an inaccurate statement of the date of the offense charged in an indictment is of negligible importance except under certain circumstances. N.C.G.S. 15-155 explicitly provides that no judgment shall be reversed or stayed because an indictment omits stating "the time at which the offense was committed in any case where time is not of the essence of the offense, nor [because it states] the time imperfectly . . . ." This Court has repeatedly noted that "a child's uncertainty as to the time or particular day the offense charged was committed" shall not be grounds for nonsuit "where there is sufficient evidence that the defendant committed each essential act of the offense." *State v. Effler*, 309 N.C. 742, 749, 309 S.E. 2d 203, 207 (1983). *See also State v. King*, 256 N.C. 236, 123 S.E. 2d 486 (1962); *State v. Tessnear*, 254 N.C. 211, 118 S.E. 2d 393 (1961).

This policy of leniency as to the time of the offenses stated in an indictment governs so long as the defendant is not thereby deprived of his defense. *See, e.g., State v. Sills*, 311 N.C. 370, 376, 317 S.E. 2d 379, 382 (1984). Here, defendant has failed to show that he was prejudiced. This Court's summation of the same issue raised by the defendant in *State v. Effler* is equally applicable here:

> The record is devoid of any indication whatsoever that defense witnesses were unavailable; that defendant was surprised in any way by the State's evidence; or that defendant intended to present an alibi defense. In post-trial motions and on appeal, no affidavit or statement has been presented regarding the prospective testimony of any witness not called at trial. In sum, the defendant has failed to meet his burden of establishing prejudice.

*Effler*, 309 N.C. at 750, 309 S.E. 2d at 208.

Finally, defendant assigns error to occurrences in the sentencing hearing which resulted in the imposition of consecutive

life sentences. Because we reverse the conviction on the charge of first degree sexual offense, we need not address this assignment.

Case No. 85CRS39441 (first degree rape)—no error.

Case No. 85CRS39447 (first degree sexual offense)—reversed.